FRANCES W. FITCH *vs.* VIOLET K. WINDRAM.

Norfolk. March 13, 1903. — June 24, 1903.

Present: KNOWLTON, C. J., LATHROP, BARKER, & HAMMOND, JJ.

*Landlord and Tenant.*

An agreement in writing under seal for the sale of land, in which no time for performance is specified, giving the purchaser the right to possession and the "use and benefits, profits, income and general rights in said estate", providing that the vendor shall not commit waste or use the property or lease or sell any part of it without the consent of the purchaser, and that the agreement shall be binding upon the heirs, executors, administrators or assigns of each party, and providing also that the purchase money shall include interest on the amount named and taxes, water rates and repairs, is a present grant to the purchaser of the possession of the premises to continue until lost by his default or by the expiration or annulment of the agreement by lapse of reasonable time or otherwise, and gives the purchaser the right to lease the premises to another.

SUMMARY PROCESS under R. L. c. 181, for the possession of five parcels of land at Millis with the buildings thereon. Writ dated May 16, 1902. .

In the Superior Court the case was tried before *Braley*, J., without a jury. He found that the plaintiff was entitled to the possession of the premises described in the writ and ordered judgment and execution therefor. The defendant alleged exceptions.

The judge made certain findings of fact by which it appeared that the plaintiff had acquired possession of the premises under a certain agreement with one Pillsbury dated October 14, 1899, which is printed below. This agreement was made on the same day that Pillsbury acquired his title, and the judge found that Pillsbury was never in the actual possession of and never occupied the premises at any time. On May 19, 1901, the plaintiff being thus in possession leased the premises to the defendant by a lease which expired on April 1, 1902. After June 28, 1901, the defendant refused to pay rent under the lease, having received a notice from Pillsbury not to pay rent to the plaintiff. Before the expiration of the lease the defendant made certain payments to Pillsbury, and after the expiration of the lease and before the date of the writ she paid to Pillsbury a certain sum of money for use and occupation of the premises for one month. The judge found that no demand on the part of either Pillsbury or the plaintiff was made upon the other under the agreement of October 14, 1899, and that the agreement was of full force and effect between the parties to it, that Pillsbury knew of the lease by the plaintiff to the defendant at the time it was made and assented to it, and that the plaintiff never assented to the agreement made between Pillsbury and the defendant.

The agreement of October 14, 1899, was executed under seal by Pillsbury as party of the first part and one Jefferson, an agent of the plaintiff, as party of the second part. The agreement was as follows:

" The party of the first part hereby agrees to sell to the party of the second part or to whom said second party may designate in writing a certain estate situated in Millis, said County and State, being five parcels of land and buildings thereon and bounded as follows: " [Description.]

" Said premises are hereby to be conveyed subject to the existing rights of way as shown in deed of Henry L. Houghton to Carl J. Brunan and to a mortgage to the Medway Savings Bank

for five thousand dollars, if the same has not already been paid by said second party. Being all and the same property in Millis conveyed by Shepard and Fuller of Lowell, said State, to said second party. Said premises are to be conveyed on demand by a good and sufficient quitclaim deed of the party of the first part, conveying a good and clear title of the same free from all incumbrances made by said first party or suffered to be made by said first party, except as above. For the sum of One Dollars and other valuable considerations to be paid by said second party, in a manner and at times hereinafter mentioned, and the first party further agrees that on demand of said second party or his order, he, said first party, shall and will at the Registry of Deeds for said Norfolk County at Dedham, at noon, or some other place agreed to in writing by the said parties, and upon payment and executing the deed such as stamps making, conveying and recording, and all usual expenses of a conveyanc., if any are required. And upon the further payment of said second party of the sum of Four Thousand Dollars and the interest of said sum, at five per cent per annum and the interest on said five thousand dollar mortgage and interest on its interest at five per cent per annum, and the taxes, water rates, repairs, if said second party approves of the same in writing, by said second party his order, his heirs, administrators, and assigns, said first party shall execute and deliver to said second party the above described deed or to his order, being a proper deed of conveyance duly acknowledged for the conveying and assuring to them the fee simple of the premises, free from all incumbrances made by said first party, except as are hereinafter or heretofore agreed upon in writing, at the time and place above mentioned. It is still further agreed that said first party shall or will not suffer any waste of or use of the product of the said estate or receive any benefit therefrom, nor cut any wood therefrom, except he first obtains consent in writing from said second party and first party agrees to give said second party the use and benefits, profits, income and general rights in said estate, and it is agreed that said first party shall not lease, nor rent, nor sell the estate nor any part thereof to any other person, persons, corporations or individuals, or mortgage or incumber the same, or allow it to be incumbered, unless with the consent of the second party, and said first party

agrees to protect the property against the lawful claims of all parties, and pay if so requested by the Bank, the Medway Savings Bank mortgage. It is further agreed hereby that the above stipulations aforesaid are to apply to and bind the heirs, executors, administrators, or assigns of said second party and said first party. And it is still further agreed that if the party of the first part shall fail or refuse to execute and deliver a proper deed of conveyance in the manner and at the time and place above specified for the purpose, provided the second party shall be ready to fulfil the covenants then to be fulfilled on his part, provided said first party shall be ready to deliver such deed as aforesaid, then the party so failing shall and will pay the other party or his assigns the sum of Twenty-five thousand dollars, which sum is hereby declared, fixed and agreed upon as the liquidating amount of damages by the party so failing as aforesaid for his non performance.

"IN WITNESS the said parties to these presents have hereunto set their hands and seals on this fourteenth day of October, A. D. 1899."

*G. R. Nutter*, for the defendant.

*J. C. Sharkey*, for the plaintiff.

HAMMOND, J.   The agreement of October 14, 1899, between Pillsbury and the plaintiff was something more than an agreement upon the part of Pillsbury to sell and on that of the plaintiff to buy the land over which this controversy has arisen. Although it is carelessly drawn, yet so far as material to this case its provisions are sufficiently clear.

After describing the land and stating the amount to be paid and the time and manner in which the deed is to be delivered, it is provided that Pillsbury, the party of the first part, shall not suffer any waste or use of the said estate or receive any benefit therefrom, nor cut any wood therefrom except he first obtains consent in writing from the party of the second part, and the former agrees also to give the latter the "use and benefits, profits, income and general rights in said estate." It is also agreed that the former shall "not lease, nor rent, nor sell the estate nor any part thereof . . . unless with the consent" of the latter. It is also expressly provided that the agreement shall be binding upon the heirs, executors, administrators or

assigns of each party. These provisions taken in connection with those respecting the interest on the amount of the purchase money to be paid, and the taxes, water rates and repairs, all go to show that this was not simply the ordinary agreement for the sale of land, where it is the expectation of the parties that the sale shall be consummated by a deed within the time reasonably required for the examination of the title or some other short period, but was rather an agreement where it was contemplated that the deed might not be called for until after the expiration of months and even years, and hence it was desirable that the rights of the parties as to the possession in the meantime should be fixed.

It is contended by the defendant that there was no intention to create in the plaintiff any term in the land, that there was simply a promise on the part of Pillsbury to convey a fee upon the happening of certain conditions, that until the time came for the delivery of the deed the agreement seems to contemplate that he may be in possession, and that, inasmuch as he holds the title and possession, the relation between him and the plaintiff was that of trustee and *cestui que trust,* with an option of purchase by the latter.

But for reasons stated above we think that this is an agreement for sale, together with an agreement for fixing the rights of the parties as to the possession during the continuance of the agreement; that in language sufficiently clear and precise the right of possession is given to the plaintiff. It is given to her by a sealed instrument and is a legal right. It is not simply an executory promise to give possession, but it is a present grant to the plaintiff of the possession, to continue during the existence of the agreement. The right given is not an estate at will, but a much greater estate, and until it is lost by the default of the plaintiff, or by the expiration or annulment of the agreement by lapse of reasonable time or otherwise, she will continue to hold it. It is stated by the judge before whom the case was tried that no time was specified within which the agreement was to be performed, and his finding for the plaintiff involves a finding that, notwithstanding Pillsbury's conduct as set forth in the bill of exceptions, the agreement was still in force at the date of the writ.

By the fair interpretation of the agreement the plaintiff was entitled to reap the profits of the income of the estate either by personal occupation or by leasing the same to another. The judge found that Pillsbury knew of the lease and assented to it at the time it was made, and that the lessee entered into the occupation and use of the premises; and the finding of the judge involved a finding that the relation of landlord and tenant existed between the plaintiff and lessee under the lease. It is also further found that Pillsbury was never in the actual possession of the land and never occupied it at any time.

Since the relation of landlord and tenant existed, and since the rights acquired by the plaintiff under the agreement of October 14, 1899, are not shown to have been terminated, the title of Pillsbury to the possession does not seem to be superior to that of the plaintiff, and therefore, even if attornment to the possessor of a paramount title or proof of the expiration of the landlord's title since the lease was given would be a defence to an action of this kind, the facts fail to prove such a defence.

*Exceptions overruled.*